IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARGARET ANNE LAPLANTE,

    Plaintiff,

                                     1:14-CV-00860-PK

                                     OPINION AND
v.                                   ORDER

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

PAPAK, Magistrate Judge:

    Plaintiff Margaret Anne Laplante filed this action on December 29, 2014, seeking judicial review of the Commissioner of Social Security's final decision denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II of the Social Security Act (the "Act"). This court has jurisdiction over LaPlante's action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).

Page 1 - OPINION AND ORDER

LaPlante argues that the Administrative Law Judge ("ALJ") erred by: (1) improperly rejecting her treating physicians' findings in favor of his own independent findings and speculative inferences without stating specific and legitimate reasons supported by substantial evidence; (2) failing to consider the combined effect of her impairments; (3) finding her subjective symptom testimony less than fully credible; (4) opting not to hear testimony from a vocational expert; and (5) failing to identify specific evidence to support his conclusion that she was capable of substantial gainful activity after January 1, 2011. I have considered all of the parties' briefs and all of the evidence in the administrative record. For the reasons set forth below, the Commissioner's final decision is affirmed.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the Administrative Law Judge considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R.§§ 404.1520(a)(4)(i),

Page 2 - OPINION AND ORDER

404.1520(b), 416.920(a)(4)(i), 416.920(b).  Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(i).  An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer.  *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c).  The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b); *see also Bowen*, 482 U.S. at 141.  If the ALJ finds the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c).  Nevertheless, it is well established that "the two-step inquiry is a de minimis screening device to dispose of groundless claims." *Smolden v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), *citing Bowen*, 482 U.S. at 153-154.  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that 'has no more than a minimal effect on an individual['s] ability to work." *Id.*, *quoting* S.S.R. 85-28, 1985 SSR LEXIS 19 (1985).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).  If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. §§ 404, subpt. P, app. 1, the claimant will

Page 3 - OPINION AND ORDER

conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, between the third and fourth steps the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related physical and/or mental activities on a regular and continuing basis,[1] despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.95(a); *see also* S.S.R. No. 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). In the event the claimant is no longer capable of his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof shifts, for the first time, to the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether a person with those characteristics and RFC could perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; *see also* C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g),

---

[1] "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." S.S.R. No. 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

404.1560(c), 404.1566, 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. If the Commissioner

meets his burden to demonstrate the existence in significant numbers in the national economy of

jobs capable of being performed by a person with the RFC assessed by the ALJ between the third

and fourth steps of the five-step process, the claimant is found not to be disabled. *See Bowen*,

482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566,

416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. A claimant will be found entitled to benefits

if the Commissioner fails to meet that burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see*

*also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

## LEGAL STANDARD

A reviewing court must affirm an Administrative Law Judge's decision if the ALJ applied

proper legal standards and his or her findings are supported by substantial evidence in the record.

*See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193

(9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a

preponderance; it is such relevant evidence as a reasonable person might accept as adequate to

support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing*

*Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The court must review the record as a whole, "weighing both the evidence that supports

and the evidence that detracts from the Commissioner's conclusion." *Id.*, *citing Reddick v.*

*Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The court may not substitute its judgment for that of

the Commissioner. *See id.*, *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir.

2006); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the ALJ's

interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible

[of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.

Page 5 - OPINION AND ORDER

1989), *citing Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

## ADMINISTRATIVE HISTORY

LaPlante protectively filed for DIB and SSI on April 21, 2005. Tr. 101. LaPlante alleged disability beginning November 1, 2004, based on her diagnosed systemic lupus erythematosus (SLE), type II diabetes, knee injury, and left hand injury. Tr. 23. 101. The ALJ initially found the claimant not disabled on October 26, 2007, and LaPlante appealed to the United States District Court for the District of Oregon. Tr. 23. On remand, the ALJ issued a partially favorable decision on September 9, 2010. Tr. 93. LaPlante was declared disabled under the Social Security Act from November 1, 2004, to September 30, 2007, and awarded benefits. Tr. 97. She returned to work after the closed period of disability and was thereafter capable of substantial gainful activity. Tr. 43.

LaPlante then protectively filed concurrent applications for DIB and SSI on December 28, 2010. Tr. 23. Her claims were denied initially on March 24, 2011, and again upon reconsideration on June 6, 2011. Tr. 23. She timely filed a written request for a hearing, which was held via video conference on October 2, 2012. As of her amended alleged onset date of January 1, 2011, LaPlante has only worked part-time because of her symptoms. Tr. 25.

On October 2, 2012, a hearing was conducted before an ALJ in connection with LaPlante's DIB and SSI applications. Tr. 40. LaPlante and her attorney appeared at the hearing. Tr. 40. A vocational expert, Frank Lucas, was also present but did not testify. Tr. 41.

On December 27, 2012, ALJ Neiswanger denied LaPlante's application for DIB and SSI. Tr. 20. LaPlante timely requested review of the ALJ's decision and the Appeals Council denied her request on March 28, 2014. Tr. 1, 19. Consequently, the ALJ's decision of December 27, 2012, became the Administration's final order for purposes of judicial review. *See* 20 C.F.R.

Page 6 - OPINION AND ORDER

§422.210(a); *see also, e.g., Sims v. Apfel*, 530 U.S. 103, 107 (2000). This action followed.

## SUMMARY OF THE ADMINISTRATIVE RECORD

Laplante was born on December 20, 1962. Tr. 248.[2] She has a Bachelor of Science in criminal justice. Tr. 45. According to the evidence of record, LaPlante worked as a retail associate and manager from August 1996 to September 2001 and September 2006 to July 2007, as a legal assistant from September 2001 through November 2004, and as a receptionist and office clerk from February 2006 to present. Tr. 325. LaPlante states that she has been unable to work full-time since September 2001 because of her symptoms. Tr. 62.

The earliest medical evidence in the administrative record shows that LaPlante saw Bobbie Smith-Ede, F.N.P., on December 6, 2010, at the Medford Medical Clinic. Tr. 393. LaPlante presented symptoms related to lupus, hypothyroidism, and diabetes. *Id* She sought to resume treatment after a period of uninsurance. *Id.* F.N.P. Smith-Ede ordered labs that indicated LaPlante's TSH was significantly high, her creatine level was slightly elevated, and her LDL was significantly raised. Tr. 398, 401-02.

F.N.P. Smith-Ede referred LaPlante to Rudy Greene, M.D., to discuss her lupus-related symptoms. Tr. 394. Dr. Greene noted that he had previously treated LaPlante for the same condition but had not seen her for nine years. Tr. 408. Dr. Greene also noted that LaPlante had previously found some success managing her symptoms with Plaquenil, but had discontinued all medications because of cost. Tr. 408. He stated that he would "consider" putting LaPlante back on Plaquenil after her thyroid normalized. Tr. 409.

LaPlante visited Kathryn Warner, F.N.P., on March 22, 2011. She stated that she had

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record.

taken the medicine that Dr. Greene had prescribed for her hypothyroidism, but reported continuing fatigue and muscle aches. Lab work indicated that her A1C levels were at target and that her sedimentation rate, CRP, and TSH were at normal levels. Tr. 440.

LaPlante visited William Palm, M.D., in May and August of 2011 to address a right facial cheek lesion. Tr. 429. Dr. Palm excised the lesion because it was "almost certainly" basal cell skin cancer based on its macroscopic appearance. Tr. 432, 435. LaPlante returned to Dr. Palm on September 30, 2011, with "numerous somatic complaints" including bilateral leg edema, shortness of breath, tremors daily, headaches daily, extreme fatigue, muscle fatigue, muscle weakness, fever daily, muscle loss, mouth sores, and torn nail beds. Tr. 429. Dr. Palm found only trace pitting edema upon examination. Tr. 429. Dr. Palm advised LaPlante that he was seeing her only on dermatologic referral and recommended a follow-up with a rheumatologist, but agreed to obtain updated labs. Tr. 429.

After a nine-month absence, LaPlante followed up with Dr. Greene. She presented with the same symptoms, which had reportedly worsened. Tr. 406. She reported oral ulcers, but there were none present. Tr. 406. She reported shortness of breath, but exhibited no rales, rhonchi, or wheezes. Tr. 406. Motor strength testing was also consistent with Dr. Greene's findings from nine months prior. Tr. 477. Dr. Greene ordered new lab testing that showed LaPlante's TSH and creatine levels within normal limits. *Id.* She also tested negative for ANA and essentially all lupus panels. *Id.*

The record shows that in 2012 LaPlante primarily received treatment from Richard Julyan, M.D. In May 2012, Dr. Julyan described LaPlante's hypothyroidism as well controlled and her TSH as high, with symptoms. Tr. 421. He increased the dosage of her thyroid medication. Tr. 421. LaPlante returned to Dr. Julyan in June after a fall that hyperextended her

Page 8 - OPINION AND ORDER

knee. Dr. Julyan diagnosed her injury as a leg strain. Tr. 418.

State agency non-examining medical advisors reviewed LaPlante's claim file in March and June of 2011. The advisors made note that none of LaPlante's treating physicians had concluded that she was unable to return to work as a typist or transcriptionist because of her impairments. Tr. 29. They concluded that "the claimant should have the capacity to lift, carry, push, and pull up to 10 pounds at all times, stand and/or walk six hours, and sit six hours." Tr. 29.

### SUMMARY OF ALJ FINDINGS

At the first step of the five-step sequential evaluation process, the ALJ found that LaPlante did not engage in substantial gainful activity based on her income after January 1, 2011. Tr. 25, 68. LaPlante amended her alleged onset date to conform with this finding. Tr. 68-71. He therefore proceeded to the second step of the analysis.

At the second step, the ALJ found that LaPlante's medical impairments of "systemic lupus erythematous, hypothyroidism, obesity, and history of injury to the fingers and left hand in a right-hand dominant individual" were "severe" for the purposes of the Act. Tr. 26. The ALJ further found that LaPlante's medically determinable impairment of diabetes mellitus is not "severe" because it can be controlled with dietary restrictions and her treating physicians expressed "little concern" about its severity. Tr. 26. Because of LaPlante's several severe impairments, the ALJ proceeded to the third step of the disability analysis.

At the third step, the ALJ found that none of LaPlante's impairments were equivalent to the enumerated impairments found in 20 C.F.R. § 404, subpt P, app. 1. The ALJ found that LaPlante's systemic lupus erythematosus did not meet the criteria in Listing 14.02 because none of her treating physicians mentioned findings "equivalent in severity" to the criteria. Tr. 26. The

Page 9 - OPINION AND ORDER

ALJ stated that he made this conclusion in consideration of LaPlante's obesity, in accordance

with SSR 02-1p, and endocrine disorders, in accordance with Listing 9.00. Tr. 26. The ALJ

found that none of these impairments, alone or in combination, demonstrated the severity

described in any listing. Tr. 26.

Therefore, the ALJ properly proceeded to the assessment of LaPlante's residual

functional capacity. Specifically, the ALJ found that:

> [LaPlante] has the residual functional capacity to lift, carry, push, and pull
> 10 pounds at all times. She can stand and/or walk for six hours in an eight-
> hour workday with normal breaks and she also can sit for six hours in an
> eight-hour workday with normal breaks. She is able to climb, stoop, kneel,
> crouch, and crawl on an occasional basis. The claimant may use her upper
> extremity frequently, not constantly, for handling and fingering activities.

Tr. 27. In reaching this finding, the ALJ considered all of the material objective medical

evidence in the record, LaPlante's own testimony, and a Work Activity Questionnaire completed

by her employer in January 2011 that indicated she was able to perform her job duties consistent

with a non-disabled person's performance. Tr. 29-31. The ALJ further found LaPlante "less than

fully credible" in light of her lack of medical treatment, refusal to follow prescribed treatment,

and the supposedly coincidental reduction of her pay to ten dollars below sustainable gainful

activity levels after her alleged onset date. Tr. 30-31.

At the fourth step of the five-step process, the ALJ found that LaPlante was able to

perform her past relevant work as a clerk because it did not require performance of work-related

activities precluded by her residual functional capacity. Tr. 31. The ALJ based this

determination in part on LaPlante's past relevant work as a clerk for the City of Medford, which

she had performed at SGA-level for periods in excess of six months over the course of 15 years.

Tr. 32. On that basis, the ALJ concluded that LaPlante was not disabled as defined by the Act at

Page 10 - OPINION AND ORDER

any time between January 1, 2011, and the date of his decision, December 27, 2012.

## ANALYSIS

LaPlante challenges the Commissioner's assessment of her ability to perform her past relevant work in light of her limited residual functional capacity on several grounds. LaPlante argues: (1) the ALJ improperly rejected her treating physicians' findings in favor of his own independent findings and speculative inferences without stating specific and legitimate reasons supported by substantial evidence; (2) the ALJ erroneously failed to consider the combined effect of her impairments; (3) the ALJ erroneously found her subjective and symptom testimony less than fully credible; (4) the ALJ erred by not hearing testimony from a vocational expert; and (5) the ALJ failed to identify specific evidence to support his conclusion that she was capable of substantial gainful activity after January 1, 2011. I will address each of LaPlante's arguments in turn.

## I.   The ALJ's Rejection of LaPlante's Treating Physicians' Opinions and Substitutions of His Own "Independent Findings and Speculative Inferences"

LaPlante broadly contends that the ALJ disregarded her physicians' opinions and conclusions in favor of his own "independent findings and speculative inferences." Pl.'s Br. at 5. LaPlante's briefing in support of this position takes the form of a lengthy, chronological recitation of her medical history in the record. *Id.* at 6-13. Defendant urges the court to disregard these "arguments" as insufficient, however, because specific assignments of error with respect to this issue are not clearly articulated in LaPlante's briefings. Def.'s Br. at 4. The Ninth Circuit has "repeatedly admonished that we cannot manufacture arguments for an appellant." *Independent Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003), *citing Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994). Rather, we "review only

issues which are argued specifically and distinctly in a party's opening brief." *Id.* Accordingly, I will credit LaPlante's arguments only to the extent they are adequately clear, complete, and particularized.

### A.    LaPlante's Treating Physicians' Diagnoses, Findings, Opinions, and Ultimate Conclusions

LaPlante argues that the ALJ erred by rejecting the diagnoses, findings, opinions, and ultimate conclusions of her treating physicians without citing clear and convincing evidence or specific and legitimate reasons. Pl.'s Br. at 5. Claimants may introduce the findings, opinions, and conclusions of their treating physicians to establish disability, but the ultimate disability determination is reserved for the Commissioner. *Holohan v. Massanari*, 146 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). The ALJ is not bound by the opinions of treating physicians, even if uncontroverted, and may reject them on the basis of legitimate and specific reasons supported by clear and convincing evidence. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (internal quotation marks omitted). Furthermore, "[w]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

LaPlante concedes in her opening brief that "no treating medical provider opined specifically concerning the severity and functional effects of Plaintiff's multiple medical conditions." Pl.'s Br. at 12-13. Additionally, when given the opportunity by the ALJ to obtain a letter from a treating physician supporting her claim of disability, LaPlante not only failed to do

so but actively decided not to because "anyone contacted could be detrimental to [her] case." Tr.
369. Therefore, it is unclear what finding of disability LaPlante feels the ALJ improperly
disregarded. On the contrary, on this record, no treating physician to date has concluded that
LaPlante's current impairments are disabling within the meaning of the Act.

Furthermore, the ALJ considered reports from state agency non-examining medical
advisors who had knowledge of LaPlante's impairments. "Opinions of a non-examining,
testifying medical advisor may serve as substantial evidence when they are supported by other
evidence in the record and are consistent with it." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169
F.3d 595, 600 (9th Cir. 1999); *see also Shafer v. Barnhart*, 120 F. App. 688, 694 (9th Cir. 2005)
(ALJ can reject treating physicians' findings in favor of non-examining medical advisor's when it
is consistent with other evidence in the record). These advisors concluded that "the claimant
should have the capacity to lift, carry, push, and pull up to 10 pounds at all times, stand and/or
walk six hours, and sit six hours." Tr. 29.

The record reflects that the ALJ stated legitimate and specific reasons for his conclusions
regarding LaPlante's impairments and residual functional capacity. Specifically, the ALJ
considered records from LaPlante's 2012 visits to Dr. Julyan and Dr. Greene. The ALJ found
that Dr. Julyan increased the dosage of her thyroid medication in response to symptoms, but
otherwise described her hypothyroidism as "well controlled." Tr. 29. The ALJ also cited Dr.
Greene's opinion that her physical exam was "basically within normal limits but for some slight
swelling." *Id.* Based on these records, as well as an assessment of the record as a whole, the
ALJ properly concluded that LaPlante had not met her burden of proving that her residual
functional capacity precluded her from performing substantial gainful activity.

**B.     The ALJ's "Independent Findings and Speculative Inferences"**

LaPlante next claims that the ALJ erred by substituting his own opinions, independent

findings, and speculative inferences for that of her treating and examining medical sources. This

assertion suffers from the same defects as the prior argument. It is unclear based on her opening

brief's bare recitation of the record where erroneous findings or inferences were made in the

ALJ's decision and the issue is not articulated with greater specificity in her reply brief. For the

reasons stated above, I find that the ALJ's decision was based on a comprehensive and rational

review of the record. Giving due deference to the ALJ's assessment of the evidence in the

record, I further find that the ALJ's assessment of the medical evidence and conclusion of no

disability is sufficiently supported by the record.

**II.    The ALJ's Failure to Consider the Combined Effects of LaPlante's Impairments**

Next, LaPlante argues that the ALJ erroneously failed to consider the aggregate effect of

her multiple impairments. Again, LaPlante's contention takes the form of a recitation of her

medical history that defendant urges the court to disregard. The ALJ is required to consider the

combined effect of claimant's impairments without regard to whether any single impairment

would alone be sufficiently severe. 20 C.F.R. § 404.1523; *see also Lester v. Chater*, 81 F.3d

821, 829-830 (9th Cir. 1995). Here, the ALJ clearly did consider the combined effects of her

impairments when he addressed each one in turn and concluded that "[e]ven in combination, the

overall record does not demonstrate the severity described in any listing." Tr. 26. LaPlante does

not bring any specific challenge to the ALJ's method of evaluating her combined impairments,

nor does she raise any argument as to why their combined effects would be greater than the sum

of their parts. Therefore, I find that the ALJ appropriately considered the combined effect of

LaPlante's impairments and this court should give due deference to his conclusion. *Burch*, 400

Page 14 - OPINION AND ORDER

F.3d at 683 ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence") *citing Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).

III.    **The ALJ's Rejection of LaPlante's Self-Reported Pain and Subjective Symptom Testimony**

LaPlante next argues that the ALJ erred by rejecting her subjective symptom testimony. In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. § 404, 1529. First, the ALJ determines whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of symptoms. *Smolen v. Chater*, 80 F.3d 1282, 1283 (9th Cir. 1996). If such evidence exists, and barring affirmative evidence of malingering, the ALJ must give clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Id.* at 1284; *see also Lingenfelter*, 504 F.3d at 1036. The ALJ satisfies this standard by stating specifically which symptom testimony is not credible and what facts in the record lead to that conclusion. *Id.*

The ALJ may consider numerous factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Potter v. Comm'r of Soc. Sec.*, 571 F. App. 569, 571 (9th Cir. 2014), *citing Smolen*, 80 F.3d at 1284. Where the ALJ's credibility findings are supported by substantial evidence in the record, the

reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Substantial evidence requires "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (per curiam) (internal quotation marks omitted). A general assertion that plaintiff is not credible, however, is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ found LaPlante's statements regarding the "intensity, persistence, and limiting effects" of her symptoms "less than fully credible." Tr. 30. The ALJ provided several specific reasons to support this conclusion.

First, the ALJ found that the drop in LaPlante's income to just ten dollars below substantial gainful activity levels—immediately following a notice from the Administration that she did not qualify for benefits due to her income level—undermined her credibility. Tr. 30. The ALJ is permitted to consider whether a claimant stopped working for some reason other than her alleged disability. *Sadeeq v. Colvin*, No. 13-35931, 2015 WL 1619456, at *1 (9th Cir. Apr. 13, 2015), *see also Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Here, LaPlante asserts in her reply brief that she experienced "more pain and fatigue than previously" in the months leading up to her change in hours. Pl.'s Reply Br. at 12. The medical records that LaPlante cites, however, only document that she was continuing to experience symptoms in the months leading up to her amended onset date, not that her symptoms were new or worsening. Tr. 55-56; 390-95; 408-09; 443-44. The only evidence that LaPlante points to that makes mention of progressively worsening symptoms is a report from F.N.P. Warner. Tr. 440. That

Page 16 - OPINION AND ORDER

record only notes that LaPlante reported "feel[ing] worse than she has ever felt," but nonetheless

found objective evidence of "normal labs" and made no finding of worsening symptoms. Tr.

440. This document makes no medical conclusion that her condition was deteriorating. In

consideration of LaPlante's sudden decrease in income, without medical evidence suggesting a

contemporaneous worsening of her condition, the ALJ found that the change was "too suspicious

. . . to chalk up to coincidence." Tr. 30. This conclusion is sufficiently specific because it is a

clearly articulated interpretation of substantial evidence in the record. *See, e.g., Burch*, 400 F.3d

at 679; *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

Second, the ALJ found that LaPlante's "refusal to follow prescribed treatment"

undermined her credibility. Tr. 30. Specifically, the ALJ found that LaPlante did not follow

recommended treatment that had previously been effective—namely Plaquenil—and had missed

or cancelled numerous medical appointments. *Id*. LaPlante argues that she was not prescribed

Plaquenil, that her reluctance to take the drug was based on valid concerns regarding side effects,

and that she did present for treatment. She also argues that the ALJ erred by inferring a negative

credibility finding without considering potential justifications. She cites SSR 96-7p, which states

as follows:

> The explanations provided by the individual may provide insight into the
> individual's credibility. For example:
>                          * * * * *
> • The individual may not take prescription medication because the side
> effects are less tolerable than the symptoms.
> • The individual may be unable to afford treatment and may not have
> access to free or low-cost medical services.

Social Security Ruling 96-7p. While the record here is unclear as to this specific point, I find

that the ALJ did err in this narrow regard as a matter of law—even if his findings are not

Page 17 - OPINION AND ORDER

factually inaccurate—because his decision does not even make mention of LaPlante's concerns about side effects and fails to address financial reasons why she may have missed at least some of her appointments.

Nonetheless, I find this to be harmless error. The Ninth Circuit has said that an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion." *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1197 (9th Cir. 2004); *see also Carmickle v. Comm'r, Soc. Sec. Admin,* 533 F.3d 1153, 1162 (9th Cir. 2008). The Ninth Circuit has repeatedly found that this applies in the context of credibility determinations when there are other valid reasons supported by the record. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1227 (9th Cir. 2009); *Carmickle.,* 533 F.3d at 1162–63; *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d at 1195–97 (9th Cir. 2004). LaPlante's attendance at medical appointments and willingness to take Plaquenil, if prescribed, has no bearing on the other reasons the ALJ found her less than fully credible or not disabled under the Act. Therefore, because I find that the ALJ was correct in making his other credibility findings, this is an instance of harmless error.

Third, the ALJ found that LaPlante's implication that she could only perform her work from the City of Medford because of accommodations from an "understanding" employer further called into question her credibility. Tr. 31. LaPlante's reply brief asserts that this is a "red herring" because she never actually received accommodations. Pl.'s Reply Br. at 17. This misconstrues the ALJ's finding, however, which is based upon LaPlante's statements at the administrative hearing. The ALJ is referring to an exchange between LaPlante and her counsel

in which she claims: "the fatigue has gotten much worse"; "the muscle pain has gotten

increasingly worse"; "[e]very step you're in agony"; and "[i]t hurts to walk across the floor." Tr.

60-61. Then, when asked, she testified that she was only able to work part time and that her

employer understood her condition "[t]o some degree." *Id.* The ALJ found these statements to

be inconsistent with documentation from her employer that she performed her job consistent

with the performance of a non-disabled person. The ALJ stated "claimant's employer seemed to

be unaware of any reason that the claimant would have needed to reduce her hours." Tr. 31.

Because he based this finding on clear inconsistencies between LaPlante's testimony and her

actual ability to perform daily activities as documented by her employer, the ALJ did not err in

making this credibility determination.

## IV.    The ALJ's Failure to Obtain an Opinion from a Vocational Expert Based On Testimonial Evidence of LaPlante's Non-Exertional Functional Limitations

At step four of the disability analysis framework, the ALJ will find the claimant not

disabled unless she meets her burden of proving she is unable to perform her past relevant work.

20 C.F.R. §§ 404.1520(e), 416.920(e); *see also Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir.

1990). Past relevant work is work that claimant has done before, that constituted substantial

gainful activity, and that lasted long enough for the claimant to be adequately trained. 20 C.F.R.

§§ 404.1560(b)(1), 416.960(b)(1).

At this step in the process, the decision to hear testimony of a vocational expert is left to

the ALJ's discretion. *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996); *see also Crane v.

Shalala*, 76 F.3d 251, 255 (9th Cir. 1996). Testimony from a vocational expert is only required

in the absence of other reliable evidence. *See Gomez*, 74 F.3d at 971. Here, the ALJ considered

LaPlante's past work with her residual functional capacity and  made a step four determination

Page 19 - OPINION AND ORDER

that "the claimant's description of this job as she performs it is not inconsistent with the residual functional capacity arrived at herein." Tr. 31-32. This decision was based upon extensive testimony from LaPlante herself and a review of her employment history and income. Tr. 47-49, 275-76, 292, 295-96, 306. Therefore, the ALJ was not required to hear testimony from the vocational expert because, based upon his informed judgment, it was unnecessary to consider whether she could find different employment befitting her residual functional capacity. The ALJ did not err in this regard.

## V.   The ALJ's Substantial Evidence to Support His Finding That LaPlante Was Capable of Substantial Gainful Activity as of January 1, 2011

LaPlante claims that the ALJ failed to provide substantial evidence that she was capable of substantial gainful activity as of her alleged onset date. This mischaracterizes the ALJ's task at step four of the disability analysis. At step four, "the claimant has the burden to prove that [she] cannot perform [her] past relevant work either as actually performed or as generally performed in the national economy" based on her residual functional capacity. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008) *citing Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002) (internal quotation marks omitted). As stated above, past relevant work is work that the claimant has done before, that constituted substantial gainful activity, and that lasted long enough for the claimant to be adequately trained. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The ALJ's step four conclusions must be upheld if supported by more than a mere scintilla of evidence. *Lingenfelter*, 504 F.3d at 1028.

The ALJ found from LaPlante's employment records that she had performed substantial gainful activity as a clerk and receptionist from 2007 to 2010. Tr. 31, 292. This work is classified in the Dictionary of Occupational Titles as "receptionist," which requires "up to six

months to learn the essential tasks." Tr. 32. As such, this qualified as past relevant work for purposes of step four. The ALJ found based on LaPlante's testimony that she "spent the entire shift seated, she did not engage in lifting/carrying, and she did not engage in postural activities" and that she "failed to identify any repetitive lifting, postural activities, or manipulative activities" required in the course of such work. Tr. 31. The ALJ compared the demands of this position to LaPlante's residual functional capacity—which allows her to "lift, carry, push, and pull 10 pounds at all times . . . stand and/or walk for six hours in an eight-hour work day . . . stoop, kneel, crouch, and crawl on an occasional basis . . . use her upper extremity frequently"— and concluded that LaPlante was able to perform her past relevant work as a receptionist. Tr. 27, 107–17, 131–41.

The ALJ's conclusion is consistent with the Work Activity Questionnaire completed by her employer on January 11, 2011—ten days after her alleged onset date—that indicated LaPlante performed her work for the City of Medford "in a manner consistent with a non-disabled person's performance." Tr. 30, 276. The questionnaire further showed that "claimant had not had excessive absences, she had not received special accommodations, and she was able to complete work in a timely fashion." *Id.* This testimony from LaPlante's employer constitutes substantial evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996) ("Lay testimony as to . . . how an impairment affects ability to work *is* competent evidence . . . and therefore *cannot* be disregarded without comment") (emphasis in original). Furthermore, the ALJ's conclusion is consistent with the 2011 findings of the non-examining medical advisors that LaPlante was "capable of returning to such work as it is generally performed." Tr. 32. Reports from non-examining medical advisors are substantial evidence when consistent with other evidence in the record. *Morgan*, 169 F.3d at 600; *Shafer*, 120 F. App. at 694. Accordingly, the

Page 21 - OPINION AND ORDER

ALJ concluded that LaPlante was capable of performing her past relevant work as of January 1,

2011. Because this conclusion was based on substantial evidence in the record, the ALJ did not

err in this regard.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision denying LaPlante's

application for DIB and SSI is affirmed.


Dated this 6th day of August, 2015.

Honorable Paul Papak
United States Magistrate Judge